**John H. SEREMBUS, Chairman on Behalf of the UIU HEALTH & WELFARE FUND, Plaintiff,**

v.

**Kalana MATHWIG, a minor, and Derek Dahlke, and Valley Trust Company, as the Trustee of the Kalana Mathwig Irrevocable Trust, U.A., Defendants.**

No. 90–C–1038.

United States District Court,
E.D. Wisconsin.

Oct. 13, 1992.

David Crist, Dempsey, Magnusen, Williamson & Lampe, Oshkosh, WI, for plaintiff John H. Serembus.

Curtis A. Borsheim, Engler, Flanagan, Reff, Baivier & Bermingham, Oshkosh, WI, for defendants Kalana Mathwig and Valley Trust Co.

## ORDER

STADTMUELLER, District Judge.

In this civil action, the plaintiff, as chairman on behalf of the Upholsters International Union (UIU) Health & Welfare Fund (hereinafter "UIU" or "Fund") seeks reimbursement, for amounts it paid to defendant Kalana Mathwig ("Kalana") for medical expenses she incurred from the settlement proceeds recovered by Kalana from third parties. Because this case involves the interpretation of an employee benefit plan regulated by the Employee Retirement Income Security Act (ERISA), jurisdiction exists pursuant to 29 U.S.C. § 1132. Presently before the court are the parties' cross motions for summary judgment.

Plaintiff seeks summary judgment that the amounts it paid be reimbursed from the settlement proceeds held by Kalana, and declaratory judgment that the plaintiff does not have an obligation to pay any further medical bills or other claims. Defendant Kalana also seeks summary judgment that plaintiff has no contractual right of subrogation against her. Further, Kalana contends that even if the court finds plaintiff has a contractual right of subrogation, she has not been "made whole" as that term is defined by Wisconsin common law of subrogation, thereby precluding plaintiff from seeking reimbursement before Kalana is fully reimbursed for her injuries. These cross motions are fully briefed with additional authorities submitted by the parties at the court's direction after a conference call on the motions.

## I. Background

When the parties have both moved for summary judgment, the facts are usually undisputed, as is true in this case. The following serves as a summary of the court's findings of fact. This case arises out of injuries suffered by Kalana Mathwig in an auto accident which occurred on June 13, 1989. Kalana, then age four, was a passenger in the back of a pick-up truck owned and operated by her grandfather, Douglas D. Meyer. Kalana's mother, Sunday Dittmer, was also a passenger in the back of the truck. The Meyer truck was struck by a car operated by Timothy Beamon. Kalana and her mother Sunday were thrown from the truck. Kalana was severely injured and her mother was killed. Kalana was treated on an inpatient basis first at Children's Hospital of Wisconsin in Milwaukee for about six weeks, then at Mercy Medical Center in Oshkosh, Wisconsin for about five weeks. Prior to the accident, Sunday Dittmer was married to James Dittmer and Kalana had been living with them. Kalana's natural father is the defendant Derek Dahlke.

UIU Health & Welfare Fund is an employee welfare benefit plan which provides compensation for health expenses to its members. UIU is regulated by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1002 et seq. Plaintiff John H. Serembus is the chairman of UIU. UIU is self-funded, in that it pays benefits from its own funds rather than contracting with a third party insurance company to pay the benefits. Kalana's stepfather, James Dittmer, was a member of the Fund at the time of the accident by virtue of his employment with Duo–Safety Ladder in Oshkosh, which participates in the Fund.

After the accident, a claim was made to the Fund for payment of Kalana's medical expenses on the grounds that Kalana was a dependent stepdaughter of James Dittmer, and therefore, covered under the plan. Before benefits were paid, James Dittmer was required to sign an assignment and subrogation agreement pursuant to the Plan's subrogation provision. That assignment and subrogation agreement contained the following language:

The trustees of the UIU Health and Welfare Fund have established the following subrogation policy:

If a covered member incurs any medical expense or loss time expense resulting

from bodily injury or sickness for which he or she may have any right of recovery against a third party, other than an insurer of the covered member, any benefits paid by the fund for such expense shall be made on the condition that the fund will be reimbursed therefore by the covered member and his or her dependents to the extent of the amount received by the covered member from such third party by way of settlement or in satisfaction for any judgment. As security for the fund's rights to such reimbursement, the fund shall be subrogated to all rights of recovery of the covered member and his or her dependents against such third party to the extent of any benefit paid by the fund with respect to such expense. The covered member and his or her dependents shall do whatever is necessary fully to secure and to protect, and nothing to prejudice, the rights of the fund to such subrogation.

Assignment and Subrogation Agreement

Whereas, the undersigned (hereinafter called "claimant") may be or has been furnished benefits in connection with the above claim under a benefit plan with the UIU Health and Welfare Fund (hereinafter called "the fund") and the cost of such benefits may be recovered by the claimant from a party liable to claimant, other than an insurer of claimant.

Now therefore, claimant intending to be legally bound, agrees to assign and does hereby assign to the fund any amounts recovered from any party, other than an insurer of claimant, to the extent of the benefits furnished or to be furnished by the fund to or on behalf of claimant. Claimant also agrees that, when claimant shall have any rights to recover from any person or persons, other than an insurer of claimant, for benefits furnished under the agreement, the fund shall be subrogated to such rights to the extent of the benefits so furnished.

Claimant agrees to reimburse the UIU Health and Welfare Fund from any recovery he or she obtains from a third party to the extent of any benefits the fund pays on account of the accident giving rise to this claim. Claimant shall immediately inform the fund of any legal action or settlement which arises subsequent to the payment of benefits hereunder. In addition, claimant shall do nothing to prejudice such rights of the fund.

Claimant authorizes the fund to claim and receive any amounts hereby assigned or to which the fund is subrogated hereby, directly from any party liable to the claimant and hereby directs such party to make such payment directly to the fund upon presentation of a permanent copy of this assignment and right of subrogation.

Claimant warrants that no settlement has been made by the undersigned with any person or corporation against whom a claim may lie, and no release has been given to anyone responsible for the loss, and that no such settlement will be made nor release given by the undersigned without prior notice and the written consent of the said UIU Health and Welfare Fund.

The UIU Fund Plan Document includes the following language pertinent to the question of subrogation:

8.1 Upon payment under this plan and as security for the plan's right to reimbursement to the extent of its payments, the plan will be subrogated to the covered person's rights of recovery against any third party causing the injury or sickness for which the claim is made. The covered person may not act to prejudice the rights of the plan and may be asked to sign a subrogation agreement before the release of benefits. In the event of any payment under this plan on behalf of an employee or a dependent, the plan shall be subrogated to all the rights of recovery therefor against any person or organization. The employee and/or dependent shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights, including but not limited to the right of the plan to sue in the name of the employee and/or dependent. The employee and/or dependent shall do nothing after loss to prejudice such rights. The receipt of any payment by any employee or depen-

dent shall be specifically conditioned upon an agreement by the employee or dependent acknowledging the subrogation clause, its terms and conditions and the agreement of the employee and/or dependent to repay any sums expended in full. 8.2 The plan shall be entitled to reimbursement from *the first dollars* to be paid to or received by an employee or dependent from a settlement or judgment from a third party (emphasis added).

On November 1, 1989, James Dittmer signed the Assignment and Subrogation Agreement form provided by UIU wherein he, as the claimant, agreed to assign to the Fund any amounts recovered from any party, other than an insurer of the claimant, to the extent of the benefits furnished by the Fund to or on behalf of the claimant, and also agreed that the Fund would be subrogated to such rights to the extent of the benefits so furnished. After James Dittmer signed the agreement, the Fund paid a total of $78,-331.36 as benefits on behalf of Kalana. At the time of the accident the Fund provided coverage for stepchildren of plan members. As such, Kalana was covered under the plan and the expenses paid by UIU were covered expenses under the plan.

In 1990, proceedings were begun for settlement of Kalana's claims arising from the accident. A settlement agreement was reached and its terms approved by the Circuit Court for Winnebago County, Wisconsin, on January 25, 1990. The approved settlement terms were as follows: Heritage Mutual Insurance Co. ("Heritage") paid $100,-000.00 under its liability policy issued to Douglas Meyer for the liability of Douglas Meyer to Kalana; Heritage paid $100,000.00 under its uninsured motorist policy issued to Douglas Meyer; and the Milwaukee Mutual Insurance Co. paid to Kalana $25,000.00, the limits on its uninsured motorist policy issued to James Dittmer. The total settlement Kalana received was $225,000.00; net recovery was about $167,000.00 after payment of attorneys' fees and expenses. A wrongful death claim was also brought by James Dittmer as the survivor of Sunday Dittmer. Pursuant to statute, Kalana received a portion of this settlement, approximately $32,000.00.

There are presently outstanding more than $70,000.00 in unpaid medical expenses for treatment of Kalana's injuries resulting from the accident.

## II. Summary Judgment Standard

Summary judgment is appropriate whenever the "pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A material fact is one that might affect the outcome of the case under applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A factual dispute exists if there is sufficient evidence for a jury to return a verdict in favor of the nonmoving party. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510-11.

The moving party has the initial burden of showing that no material facts are in dispute. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). This burden can be met by " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553-54, 91 L.Ed.2d 265 (1986). To defeat a properly supported motion the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514; Rule 56(e). The parties cannot rest on mere allegations in the pleadings, *Koclanakis v. Merrimack Mut. Fire Ins. Co.,* 899 F.2d 673, 675 (7th Cir.1990), or upon general or conclusory factual allegations in affidavits, *Mestayer v. Wisconsin Physicians Service Ins. Corp.,* 905 F.2d 1077, 1079 (7th Cir.1990). Furthermore, the opposing party must show that a specific and material factual issue exists that must be decided at trial. *See Valentine v. Joliet Township High School District,* 802 F.2d 981, 986 (7th Cir.1986).

The court must then examine the evidence in the light most favorable to the

nonmoving party, giving that party the benefit of every reasonable inference that can be drawn from those facts. *Smart v. State Farm Insurance Co.,* 868 F.2d 929, 931 (7th Cir.1989). The court's role is not to weigh the evidence but to determine whether there is a need for a trial—in other words, whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11; *McGraw–Edison Co. v. Walt Disney Prods.,* 787 F.2d 1163, 1167 (7th Cir.1986).

## III. Analysis

### A. Contractual Subrogation

■ Plaintiff seeks summary judgment that the amounts it paid for Kalana's treatment be reimbursed from the settlement proceeds held by Kalana Mathwig. It is plaintiff's contention that the language of the plan document and the subrogation agreement which Mr. Dittmer signed clearly provides for reimbursement. The defendant contends that plaintiff does not have any contractual right to subrogation.

Essentially, the Plan Document and the Assignment and Subrogation Agreement state that UIU would not pay any benefits to a covered person for injuries caused by a third person unless the covered person agreed in writing to reimburse the fund if money was received from or on behalf of the responsible third party.

The issues to be determined are whether the terms of the plan document and subrogation agreement in question provide UIU with any contractual right of subrogation against Kalana and whether said language is binding as to Kalana as the dependent of Mr. Dittmer and a third-party beneficiary of the fund. Plaintiff argues that the plan and subrogation agreement language is clear that they have a right to subrogation. Defendant Kalana does not dispute the language of the plan document or subrogation agreement. Instead, she relies on the fact that *she* never signed any subrogation agreement, arguing that she is not bound by the agreement, and relying on *Wahl v. Northern Telecom Inc.,*

726 F.Supp. 235 (E.D.Wis.1989). The court is unpersuaded by Kalana's arguments, finding *Wahl* to be distinguishable from the instant case.

In *Wahl,* Jennifer Wahl, a minor, sustained physical injuries in an auto accident. As part of a prior marital dissolution, her noncustodial father had been ordered to pay "any reasonable medical and optical expenses incurred for the care and treatment of the minor children of the parties." Jennifer's father, pursuant to the terms of the above noted order, had included Jennifer as a dependent beneficiary under his employer's (Northern Telecom, Inc., "Northern") Group Benefits Plan for Employees. That plan was self-insured and subject to ERISA.

After Jennifer was injured, the plan paid in excess of $42,000 in medical expenses incurred on her behalf. The plan then sought to share in the $100,000 in proceeds recovered from the responsible party's liability carrier, State Farm. A declaratory action was filed on Jennifer's behalf to determine whether Northern had any subrogation rights to the State Farm funds and Northern filed a counterclaim to obtain said subrogation rights.

The court found that Northern's plan stated that it would not pay any benefits to a covered person for injuries caused by a third party unless the covered person agreed in writing to reimburse the plan if money was received from, or on behalf of, the responsible third party. *Wahl,* 726 F.Supp. at 242. The court found no evidence that Jennifer or her father, as her legal representative, agreed to reimburse Northern. *Id.* Further, the court held that the only agreement between Northern and Jennifer's father included her father's promise to "promptly repay the employee benefit plan if and when I receive payment(s) for the injury or sickness from or on behalf of the responsible person." *Id.*

The court found nothing in the agreement which stated:

1. That it was between Northern and Jennifer, or

2. That it was signed by Mr. Wahl on Jennifer's behalf or,

3. That Mr. Wahl promise(d) to pay Northern if Jennifer received future payments.

*Id.* at 242–43.

The court held in favor of Jennifer, finding her not to be contractually liable to Northern. *Id.* at 243. In addition, the court found that Jennifer was not liable as a third-party beneficiary because neither the plan nor agreement between Mr. Wahl and Northern granted Northern subrogation rights to money received by Jennifer. *Id.*

It is Kalana's contention that she, like Jennifer in the *Wahl* case, should not be found contractually liable to the Fund for reimbursement. She asserts that the language of the subrogation agreement signed by her stepfather, Mr. Dittmer, contains no language which demonstrates that the agreement is between UIU and Kalana. She argues that the agreement was between Mr. Dittmer and UIU, not Kalana and UIU. Mr. Dittmer signed the agreement on the line labeled "claimant." She claims that there is nothing in this agreement which states that it was between UIU and Kalana, or that it was signed by Mr. Dittmer on Kalana's behalf, or that Mr. Dittmer promised to pay UIU if Kalana received future payments. Therefore, following the rationale of *Wahl*, the court should find in favor of Kalana.

Unlike the situation in *Wahl*, the facts of this case clearly support a finding that UIU has a contractual right to subrogation against Kalana as the plaintiff urges. In the instant case, the language of the plan document is unmistaken, it clearly sets forth that UIU shall be subrogated to the rights of the covered person. Furthermore, it states "[t]he plan shall be entitled to reimbursement from the first dollars to be paid to or received by an employee or *dependent* from a settlement or judgment from a third party (emphasis added). UIU Fund Plan Document, § 8.2. Such reimbursement language was notably absent in *Wahl*. Rather, the only written agreement regarding subrogation rights in *Wahl* was the subrogation agreement signed by Jennifer's father. It is true, as defendant points out, that here Mr. Dittmer signed the subrogation agreement and not Kalana, like the *Wahl* case where Mr. Wahl signed a

subrogation agreement but not his daughter, Jennifer. However, the court cannot ignore the clear language of the contract between UIU and Mr. Dittmer. The plan is entitled to reimbursement from the settlement proceeds received by Kalana, Mr. Dittmer's dependent. Reading the Assignment and Subrogation Agreement within the context of the UIU Fund Plan Document, which requires that such an agreement be signed prior to receipt of benefits, provides an ample basis for finding Kalana contractually liable for reimbursement to the UIU Fund.

## B. Preemption

■ Having found that plaintiff has a contractual right of subrogation to Kalana's settlement proceeds, the court must next look to apply the appropriate law to determine what, if any, federal limitations should exist on a self-insured employee benefit plan's right to subrogation against an insured. It is well established that state subrogation laws "relate[ ] to" employee benefit plans and are preempted by ERISA. 29 U.S.C. § 1144(a) (ERISA preempts state laws that "relate to any employee benefit plan); *FMC Corp. v. Holliday*, 498 U.S. 52, 57–58, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990) ("Pennsylvania's anti-subrogation law 'relates to' an employee benefit plan.") There is an exception to this rule for state laws regulating insurance, which are "saved" from preemption, 29 U.S.C. § 1144(b)(2)(A), and an exception to that exception; the "deemer" clause, § 1144(b)(2)B), which forbids the states from "deeming" employee benefits plans to be insurance companies. Thus, self-funded employee benefit plans are exempt from state laws regulating insurance. *FMC Corp.*, 498 U.S. at 60–62, 111 S.Ct. at 409; *Reilly v. Blue Cross & Blue Shield United of Wisconsin*, 846 F.2d 416, 425 (7th Cir.1988), *cert. denied*, 488 U.S. 856, 109 S.Ct. 145, 102 L.Ed.2d 117 (1988). Although it may seem anomalous to allow state regulation of insured employee benefit plans but not of self-funded plans, that is the distinction created by Congress. *Reilly*, 846 F.2d at 425 (*citing Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 747, 105 S.Ct. 2380, 2393, 85 L.Ed.2d 728 (1985)). Because the UIU plan

is self-funded it escapes any Wisconsin subrogation rules.

## C. Federal Common Law

 Defendant urges this court to adopt Wisconsin common law as the federal common law, citing *Sargeant v. Local 478 Health Benefits & Ins. Fund*, 746 F.Supp. 241 (D.Conn.1990) and *Wahl v. Northern Telecom, Inc.*, 726 F.Supp. 235 (E.D.Wis.1989) (courts adopted state law as federal common law). Under Wisconsin common law, defendant argues, an employee benefit plan may not seek subrogation until its beneficiary has been "made whole." *See Garrity v. Rural Mutual Ins. Co.*, 77 Wis.2d 537, 541–44, 253 N.W.2d 512, 514 (1977); *Rimes v. State Farm Mut. Auto Ins. Co.*, 106 Wis.2d 263, 272, 316 N.W.2d 348, 353 (1982). This doctrine dictates that the UIU Fund then cannot seek reimbursement for its payment of Kalana's medical expenses until she has been fully compensated for her injuries. In addition, Kalana argues that the equitable principles of subrogation according to Wisconsin common law prohibit enforcement of plaintiff's subrogation rights. In effect, it is defendant's position that it is unlawful to enforce a subrogation clause that requires reimbursement before a beneficiary is made whole.

ERISA does not expressly address the enforceability of subrogation provisions; therefore, this court may fashion federal common law to protect the interests of plan participants. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110, 109 S.Ct. 948, 953–54, 103 L.Ed.2d 80 (1989); *Pilot Life Ins. Co. v. Dedaux*, 481 U.S. 41, 56, 107 S.Ct. 1549, 1557–58, 95 L.Ed.2d 39 (1987) (federal courts may create federal common law where ERISA is silent).

Although the Court of Appeals for the Seventh Circuit has not ruled on the question directly, the court agrees with the reasoning in *Cutting v. Jerome Foods, Inc.*, 1991 U.S. Dist. LEXIS 20573 at *9 (W.D.Wis. December 23, 1991), that the basis for the Supreme Court's holding in *FMC Corp. v. Holliday*, 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990), appears to preclude the adoption of Wisconsin's "make-whole" subrogation rule as federal common law for self-funded employee benefit plans governed by ERISA.

In *Cutting*, plaintiffs sought to have the defendant pay their medical bills, but defendant refused until plaintiff executed a reimbursement agreement pursuant to the subrogation clause in the defendant's Health Care Plan. *Cutting*, at *1. Defendant moved for summary judgment on the ground that its interpretation of the Plan's subrogation clause was valid and enforceable under federal law. Plaintiff opposed the motion on the ground that the common law of subrogation, the "make-whole" doctrine precludes defendant from seeking reimbursement before plaintiffs are fully reimbursed for their injuries. *Id.* In determining that the federal common law should not be tailored after the Wisconsin common law, the court examined the Supreme Court's decision in *FMC Corp.*:

> In *FMC Corp.*, the Supreme Court held that ERISA exempted self-funded plans from a Pennsylvania statute that prohibited insurers and employee benefit plans from exercising their subrogation rights. Relying on ERISA's goals of producing uniformity and eliminating state interference in self-funded employee benefit plans, the Court reasoned that "[a]pplication of differing state subrogation laws to plans would therefore frustrate plan administrators' continuing obligation to calculate uniform benefits nationwide." *FMC Corp.*, 498 U.S. at 60–62, 111 S.Ct. at 409. The Court did not discuss whether a federal common law might be created to qualify a Plan's subrogation rights, but its reasoning appears to preclude any federal common law that would alter the terms of a written employee benefit plan. Modeling a federal common law upon state subrogation law would hamper the "calculation of uniform benefits nationwide," since the states do not treat subrogation clauses identically, and a plan's subrogation provision would be enforceable in one federal court but not another.

*Cutting*, at *12–13.

Defendant directs the court attention to *Wahl v. Northern Telecom, Inc.*, 726 F.Supp. 235 (E.D.Wis.1989) again, this time for support of her proposal that the court create

federal common law. In *Wahl,* an employee benefit plan sought to enforce a subrogation clause against an employee benefit plan's beneficiary. Since the plan was not signed by the beneficiary and did not expressly require the beneficiary to repay, the court refused to enforce the clause. The court stated that it would not reach the question of "what, if any, federal limitations should exist on a self-insured employee benefits plan's rights to subrogation against an insured ... because the terms of the Plan in question do not provide the Plan with subrogation rights against [the beneficiary]." *Wahl,* 726 F.Supp. at 242. Notably, the court added in a footnote that if it "had to answer this question it would hold that federal common law should state that a self-insured plan can have no greater rights to subrogation against an insured than provided by state law." *Id.* n. 4. The court reasoned that allowing self-insured plans to escape regulation of "non-core ERISA matters" would impede Congress's goal of protecting beneficiaries and would lead to a lack of uniformity of regulation between insured and self-insured plans. *Id.*

In *Sargeant,* the court characterized subrogation as not being a "core concern" of ERISA, and stated that national uniformity was not necessary in "non-core" ERISA matters. *Sargeant,* 746 F.Supp. at 245; *see also Wahl,* 726 F.Supp. at 242 n. 4. Based upon this reasoning, the *Sargeant* court applied Connecticut law as the federal common law.

As the plaintiff aptly points out, any implication which *Wahl* might have had has been undermined by the Supreme Court's rationale in *FMC Corp..* In ruling that state law would not be adopted as federal common law, the Court concluded that, "[t]o require plan providers to design their programs in an environment of different State regulations would complicate the administration of nationwide plans, producing inefficiencies that employers might offset with decreased benefits." *FMC Corp.,* 498 U.S. at 58–60, 111 S.Ct. at 408. Furthermore, the Court rejected the concept of "non-core" ERISA matters and found that ERISA preempted the application of a state anti-subrogation law. The Court determined that application of differ-

ent state subrogation laws would result in a "patchwork scheme of regulation" and undermine the Congressional intent to provide national uniformity and efficiency of benefit plan administration through ERISA. *Id.* 498 U.S. at 58–62, 111 S.Ct. at 408–09. *See also Alessi v. Raybestos–Manhattan, Inc.,* 451 U.S. 504, 523, 101 S.Ct. 1895, 1906, 68 L.Ed.2d 402 (1981) (by enacting ERISA, Congress intended to make regulation of pension plans exclusively a federal concern).

The policy considerations of ERISA weigh against creating a federal common law "make-whole" doctrine. As the court in *Cutting* explained:

> [b]ecause ERISA's primary method of protecting beneficiaries is to ensure that they receive promised benefits, there is no need to fashion an equitable remedy under ERISA "where there is no violation of ERISA under the written terms of the plan." Creating a federal common law "make-whole" rule of subrogation would substantially change the design of the plaintiff Plan, and would have the effect of allowing state law to govern in an area in which state law is preempted. (citation omitted).

*Cutting,* at *16–17.

Moreover, other courts have reached a similar conclusion. *See Provident Life & Accident Ins. Co. v. Linthicum,* 930 F.2d 14 (8th Cir.1991) (ERISA allows subrogation clause to be enforced regardless whether beneficiary made whole); *Preze v. Board of Trustees, Pipefitters Welfare Fund Local 597,* 1992 WL 38398, 1992 U.S. Dist. LEXIS 2118 (N.D.Ill. February 24, 1992) (court would not adopt Illinois anti-subrogation law as federal common law in light of the Supreme Court's pronouncement in *FMC Corp.); Dugan v. Nickla,* 763 F.Supp. 981, 984 (N.D.Ill.1991) (ERISA plan subrogation clause to recover medical payments is enforceable against all money recovered by beneficiary, whether or not for medical expenses); *General Business Forms, Inc. v. Thornburg,* 1989 WL 103382, at *6, 1989 U.S. Dist. LEXIS 10192, at *16 (N.D.Ill. August 28, 1989) (finding that ERISA preempts Illinois anti-subrogation law, but that terms of policy revived it); *Pugh v. Wilson,* 693

F.Supp. 1096, 1102 (S.D.Fla.1988) (ERISA preempts Florida collateral source statute insofar as it would prohibit the enforcement of employee benefit plan's subrogation clause).

In sum, if each state were permitted to apply its own law relating to subrogation as the federal common law, the congressional intent of ERISA would surely be subverted. ERISA's expansive preemptive provision would thereby be rendered meaningless. If Congress had intended to prohibit subrogation in the context of ERISA plans, it could have done so by including an anti-subrogation clause in the statute. Because ERISA does not expressly prohibit subrogation, the court must assume Congress intended to allow it. The court, therefore, holds that the terms of the Plan document and the provisions of its subrogation agreement, as construed above, granting plaintiff a contractual right of subrogation, control the rights of the parties.

### D. Interpretation of Plaintiff's Subrogation Right

■ The court has found that the UIU Health & Welfare Fund Plan clearly provides plaintiff with a right of subrogation against defendant. Defendant has maintained that she has not been "made whole," according to Wisconsin common law, and therefore, equitable considerations weigh in her favor, and plaintiff is not entitled to any recovery. For the reasons set forth *supra*, the court has reasoned that the Wisconsin common law "make whole" doctrine should not be applied. Rather, the court will give full effect to the language of the plan and provisions of the subrogation agreement.

Defendant has asked the court for a credit for attorney fees in the collection of the underlying settlement in the event that we find plaintiff is entitled to summary judgment. Generally, under the American Rule, a person bears the expenses of his own case. *See Mars Corp. v. Continental Bank, N.A.,* 880 F.2d 928, 932 (7th Cir.1989) (reciting the rule, although interpreting a fee-shifting statute). However, in this case, the defendant's settlement benefits the Fund. Had defendant not engaged an attorney and pursued her claims in state court, the Fund would not have recovered any of the benefits paid concerning defendant's injuries. Since the Fund benefits from defendant's pursuit of her claims, a one-third reduction of the Fund's subrogation amount of the settlement fairly apportions the attorney's fees. *See Dugan v. Nickla,* 763 F.Supp. 981, 984–85 (N.D.Ill. 1991). Therefore, the subrogation amount of $78,331.36 is reduced by one-third resulting in a total of $52,220.91. The court notes that the amount of the settlement proceeds which Kalana received is sufficient to accommodate plaintiff's right of subrogation in the amount of $52,220.91.[1] Consequently, the court will grant plaintiff summary judgment and order

1. The UIU Health and Welfare Fund Assignment and Subrogation Agreement states that the claimant assigns to the fund any amounts recovered from any party, other than the insurer of the claimant. Therefore, defendant argues, the subrogation agreement is unenforceable against money recovered from uninsured motorist carriers. Defendant directs the court's attention to *Employers Health Insurance v. General Casualty Company of Wisconsin,* 161 Wis.2d 937, 469 N.W.2d 172 (1991), where the Supreme Court of Wisconsin held that a subrogation plan, whose plan language included the right to "recover damages from a responsible third party" does not include the right to recover from an uninsured motorist carrier or its payments.

Under the language of the plan and subrogation agreement, together with Wisconsin common law of subrogation, defendant contends that of the total settlement of $225,000.00 which Kalana received, only $100,000.00, coming from a liability insurer of another, is available to accommodate plaintiff's subrogation right. This assertion is incorrect. If the terms of the subrogation agreement were construed according to Wisconsin common law, plaintiff could recover from "any party, other than the insurer of the claimant." The only recovery Kalana received from the insurer of the claimant, Mr. Dittmer, was $25,000.00 paid by Milwaukee Mutual Insurance Co., the limits on its uninsured motorists policy. The remaining $200,000.00 ($100,000.00 each for liability and uninsured motorists coverage) was paid by Heritage Mutual Insurance Co., the insurer of Douglas Meyer. Douglas Meyer was not a claimant under the UIU Plan and subrogation agreement. Therefore, $200,000.00 of the settlement proceeds is available to accommodate plaintiff's subrogation right.

In any event, whether $100,000.00 or $200,000.00 is available to plaintiff is simply irrelevant, since either amount is sufficient to accommodate plaintiff's subrogation right in the amount of $52,220.91.

that plaintiff, UIU Health & Welfare Fund, be reimbursed the sum of $52,220.91 by defendants Kalana Mathwig and the Valley Trust Company pursuant to the terms of the Plan document and the Assignment and Subrogation Agreement.

### Declaratory Relief

Plaintiff also asks for a declaratory judgment that it does not have an obligation to pay any further medical expenses or other benefits resulting from injuries sustained by Kalana in the automobile accident of June 13, 1989. Defendant Kalana has stated that no claim for additional benefits has been made nor will she make such a claim in the future. Therefore, the court will grant plaintiff its requested declaratory relief. Accordingly,

IT IS ORDERED that defendant Kalana Mathwig's motion for summary judgment be and the same is hereby **DENIED;** and

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment be and the same is hereby **GRANTED;** and

IT IS FURTHER ORDERED that defendants Kalana Mathwig and Valley Trust Company, as the Trustee of the Kalana Mathwig Irrevocable Trust, U.A., pay plaintiff, the UIU Health & Welfare Fund, the sum of $52,220.91 for reimbursement of medical expenses incurred by Kalana Mathwig; and

IT IS ALSO ORDERED that plaintiff shall have no obligation to pay any further expenses resulting from injuries sustained by Kalana Mathwig in the automobile accident of June 13, 1989.

The Clerk is directed to enter judgment accordingly.