Steven R. CARPENTER, Sr. and Cheryl Carpenter, as parents of Steven R. Carpenter, a minor, and Steven R. Carpenter, Sr., Individually, Plaintiffs,

v.

MODERN DROP FORGE COMPANY, Defendant.

Cause No. 2–94–CV–258–JM–2.

United States District Court,
N.D. Indiana,
Hammond Division.

Oct. 23, 1995.

Scott Rafferty and L. Charles Lukmann, III, Valparaiso, IN, for Plaintiffs.

Attorney for Defendant Patel—John Lloyd, IV, Hammond, IN; Attorneys for Defendant Modern Drop Forge Co.—Earl Hites, Merrillville, IN and Mark Casciari and Keri Goldstein, Chicago, IL.

## MEMORANDUM OF DECISION AND ORDER

SPRINGMANN, United States Magistrate Judge.

In this case, the Plaintiffs are attempting to escape the application of the subrogation clause of an employee benefit plan to their recovery in a personal injury action. Modern Drop Forge created the employee benefits plan under the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* (ERISA). Therefore, ERISA governs this case and preempts state law in this area. Despite ERISA's preemptive effect, the Plaintiffs attempt to escape the strictures of the plan's subrogation clause by applying the Indiana statute governing subrogation rights as federal common law. For reasons which follow, the Court declines to apply the Indiana statute as federal common law. The Plaintiffs also argue that the Defendant's subrogation right should be reduced by one-third, an amount proportionate to the Plaintiffs' attorney's fees. The Court holds that the Plaintiffs are entitled to reduce the Defendant's claim for subrogation by an amount proportionate to their attorney's fees incurred in obtaining the recovery from the negligent third party.

### I.

Steven R. Carpenter, Sr. (Mr. Carpenter) and his son (Steven) suffered personal injuries in a car accident in May, 1992. Steven died as a result of his injuries. Mr. Carpenter incurred medical expenses and suffered permanent injuries. Since he was an employee of Modern Drop Forge Company (MDFC), Mr. Carpenter received medical and disability benefits from the defendant, Modern Drop Forge Company Employee Welfare Plan (the Plan). The Plan is a self-insured employee benefit plan established and maintained by MDFC for the purpose of providing health and disability benefits to its employees and their dependents. The Plan paid a total of $16,814.10 in medical and

disability benefits to Mr. Carpenter in 1992. The Parties have no dispute concerning the rightfulness or the amount of those benefits.

After recovering from the Plan, the Plaintiffs filed a personal injury action against Dhansukh C. Patel, the negligent driver of the other vehicle. The Plaintiffs settled their claim against Patel for $40,000.00. At that time, the Plan sought to recover the full amount it paid Mr. Carpenter under a right of subrogation found in the Plan. The Plan's subrogation clause reads:

> If an eligible employee or Dependent receives, or obtains a legally enforceable right to receive, the payment from any person (or the insurer of any person) responsible for causing the employee or Dependent to sustain an accidental bodily injury or disease for which benefits are payable under this Plan, then the Employer shall have a lien upon the amount paid or to be paid by or on behalf of such responsible person (or insurer) in an amount equal to the lesser of the amount paid or to be paid by or on behalf of such responsible person (or insurer) or the amount of benefits paid to the employee or Dependent under this Plan with respect to such injury or disease, and the eligible employee or Dependent shall cooperate to enable the Employer to recover on such lien.

The Plaintiffs dispute that Modern Drop Forge is entitled to the full amount under the Plan's subrogation clause and filed this action to resolve the dispute.

The Plaintiffs claim that they did not receive a full recovery for the injuries. Specifically, the Plaintiffs claim that their suit against Patel should have been worth $80,000 to $120,000 but for the comparative fault of the Plaintiff. Counsel for the Plaintiffs estimates that the Plaintiffs' claim was compromised by at least 50% due to the Plaintiff's comparative negligence. *See* Affidavit of L.

Charles Lukmann, III. Furthermore, the Carpenters paid their counsel $13,333.33 in legal fees (this amount represents a one-third contingency fee). Finally, the Plaintiffs paid litigation expenses in the amount of $541.54. After paying all of these expenses, the Plaintiffs' original claim for $80,000 to $120,000 was reduced to $26,125.13. If the Plan recovers the full amount it paid to the Carpenters, the Plaintiffs would have $9311.03 remaining.

The Plaintiffs argue that they are entitled to reduce the amount due to Modern Drop Forge under its subrogation agreement by an amount proportionate to the Plaintiffs' shortfall in their lawsuit against Patel. In support of this position the Plaintiffs point to Ind.Code 34–4–33–12 which states:

**34–4–33–12 Liens or claims to diminish in same proportion as claimant's recovery is diminished.**

Sec. 12. If a subrogation claim or other lien or claim that arose out of the payment of medical expenses or other benefits exists in respect to a claim for personal injuries or death and the claimant's recovery is diminished:

> (1) *by comparative fault;* or
>
> (2) by reason of the uncollectability of the full value of the claim for personal injuries or death resulting from limited liability insurance or from any other cause;
>
> *the lien or claim shall be diminished in the same proportion as the claimant's recovery is diminished.* The party holding the lien or claim shall bear a pro rata share of the claimant's attorney's fees and litigation expenses.

I.C. 34–4–33–12 (emphasis added).

 The Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.* governs the Plan in this case. ERISA pre-empts the Indiana statute pertaining to subrogation rights since that statute "relate[s]" to an employee benefit plan. 29 U.S.C. § 1144(a); [1] *FMC Corp. v. Holliday*, 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356

---

1. ERISA's preemption clause reads in full: "Except as provided in subsection (b) of this section [the saving clause], the provisions of this sub-

chapter and subchapter III of this chapter shall supersede any and all State laws insofar as they

(1990).[2] Realizing this fact, the Plaintiffs do not ask this Court to apply the Indiana statute directly to the facts of this case. Instead, the Plaintiffs argue that the principle which underlies I.C. 34-4-33-12 should apply to this case as federal common law. ERISA does not speak directly to the issue of subrogation rights. Therefore, this Court may adopt federal common law on this issue. *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 56, 107 S.Ct. 1549, 1557-58, 95 L.Ed.2d 39, 53 (1987) (Federal courts may create federal common law where ERISA is silent.); *Fox Valley & Vicinity Construction Workers Pension Fund v. Brown*, 897 F.2d 275, 281 (7th Cir.1990) (en banc).

The Plaintiffs ask the Court, in fashioning federal common law in this area, to look to the law of the state for guidance. *See Sargeant v. International Union of Operating Engineers*, 746 F.Supp. 241 (D.Conn.1990). In this case, the Plaintiffs ask the Court to apply Indiana subrogation law, specifically Ind.Code 34-4-33-12. According to the Plaintiffs' argument, applying the Indiana statute as federal common law would allow the Plaintiffs to reduce their repayment to Modern Drop Forge by an amount proportionate to the shortfall in their own recovery against Patel. *See* Ind.Code 34-4-33-12.

The Defendant agrees that ERISA preempts the application of the Indiana law on subrogation. According to the Defendant, however, the federal common law on this issue holds that the terms of the Plan control. *See Cutting v. Jerome Foods, Inc.*, 993 F.2d 1293 (7th Cir.1993). Under the Defendant's legal argument, the terms of the Plan would preclude the reduction of Modern Drop Forge's subrogation rights by the amount of the Plaintiffs' comparative fault.

As an alternative to their argument concerning the application of Indiana subrogation law, the Plaintiffs argue that the amount they are required to give back to the Defendant should be reduced by an amount proportionate to the Plaintiffs' attorney's fees in their successful negligence action. In this case, that amount would result in a credit of one-third of the total amount due under the Plan's subrogation clause. The Plaintiffs do not rest this argument on any state law, but instead argue from the holdings of several cases, including *Dugan v. Nickla*, 763 F.Supp. 981 (N.D.Ill.1991); *Cutting v. Jerome Foods, Inc.*, 820 F.Supp. 1146 (W.D.Wis.1991); and *Serembus v. Mathwig*, 817 F.Supp. 1414 (E.D.Wis.1992). The Defendant disagrees with the Plaintiffs and argues that the express terms of the Plan should control the issue of attorney's fees as well.

## II.

■ The Plaintiffs first argue that the Court should apply Ind.Code 34-4-33-12 as federal common law to reduce the value of the Defendant's subrogation right by an amount proportionate to the Plaintiffs' comparative fault. Both the Seventh Circuit and the Supreme Court have recently reviewed the ERISA preemption issues which this argument invokes.

In *Cutting v. Jerome Foods, Inc.*, 993 F.2d 1293 (7th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 308, 126 L.Ed.2d 255 (1993), the court decided whether or not to apply Wisconsin's law of subrogation as federal common law under ERISA. In that case, the plaintiff was seriously injured in an automobile accident. She incurred several thousand dollars worth of medical expenses which her husband's employer paid through its unfunded, company-administered, employee

---

may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a).

**2.** The reason why ERISA preempts Ind.Code 34-4-33-12 is actually more complicated. 29 U.S.C. § 1144(a) preempts state laws which "relate to" any employee benefit plan. § 1144(b)(2)(A) excepts state laws which regulate insurance from being preempted. Since Ind.Code 34-4-33-12 is a state law which regulates insurance, it is "saved" from preemption under this provision.

Finally, however, § 1144(b)(2)(B) supplies an exception to the exception. The "deemer clause," as it is commonly known, forbids states from "deeming" employee benefit plans to be insurance companies. In *FMC Corp. v. Holliday*, the Supreme Court held that self-funded employee benefit plans are exempt from state laws regulating insurance. *FMC Corp.*, 498 U.S. at 61, 111 S.Ct. at 409, 112 L.Ed.2d at 366.

benefit plan. The written plan included a subrogation clause. When the plaintiff recovered over a half million dollars from her underinsured motorist policy and from a successful products liability claim, the plan sought to recover the amount it paid for her medical expenses. The plan asked the plaintiffs to pay back the plan according to the terms of the plan's subrogation clause. The plaintiffs refused to reimburse the plan because of Wisconsin's "make whole" doctrine. A Wisconsin rule of common law provided that a right of subrogation did not arise unless the covered individual had been "made whole." The plaintiffs conceded that the Wisconsin rule did not govern the subrogation rights arising under the employee benefits plan; ERISA clearly pre-empted it. 29 U.S.C. § 1144(a). Instead, the plaintiffs made the same argument that the Carpenters urge upon this Court. They argued that the federal courts have the right to make federal common law since ERISA does not directly speak to the issue of subrogation. The Plaintiffs then argued that the court should look to the law of Wisconsin in fashioning that federal common law. The Seventh Circuit declined to do so.

The court in *Cutting*, 993 F.2d 1293, reasoned that Wisconsin's make-whole rule of subrogation was a rule of interpretation only. As a rule of interpretation, the make-whole rule only existed when the parties were silent. In many states which have make-whole subrogation rules, "the beneficiary of an insurance policy or (as here) an employee welfare or benefits plan can if he wants sign away his make-whole right." *Id.* at 1297 (citations omitted). The Seventh Circuit did not decide whether or not to adopt Wisconsin's make-whole subrogation rule because the make-whole subrogation principle, as a default rule of interpretation, could be "overridden by clear language in the plan." *Id.* at 1298–99.

The Court of Appeals then looked to the language of the plan. The question was whether the terms of the plan were clear enough to override the make-whole principle.

Rather than decide that question, however, the court relied on the standard of judicial review given to plan administrators under ERISA. Under that standard of review, the court must defer to the interpretation and decision of the plan's administrators unless they have acted arbitrarily or capriciously in their determination. *Cutting*, 993 F.2d at 1295–96.[3] The court decided that the plan administrator's interpretation of the plan language was not arbitrary or capricious. Therefore, the court upheld the plan administrator's interpretation. *Cutting*, 993 F.2d at 1299.

In our case the Indiana statute is not simply "a rule of interpretation." In other words, the clear language of an insurance policy will not override the statute. *Cutting*, strictly understood, is inapplicable to this case because its holding rested on the fact that the make-whole rule was a rule of interpretation. In fact, despite its cautionary statement, the decision in *Cutting* left open the possibility that federal courts may adopt a federal common law rule which would override the terms of an ERISA plan in all cases. *See Cutting*, 993 F.2d at 1297. The court in *Cutting* declined to adopt a common law rule because any common law rule it adopted would be overridden by clear language in the Plan. Therefore, the narrow holding of *Cutting* does not compel this court to follow the terms of the Plan.

Despite the narrow basis upon which the holding in *Cutting* rests, this Court will not adopt Ind.Code 34–4–33–12 as federal common law. The holding and reasoning of *FMC Corp. v. Holliday* will not permit a different result. In *FMC Corp.* the Supreme Court interpreted the meaning and extent of ERISA's preemption clause. The Court held that ERISA preempted a Pennsylvania statute dealing with subrogation rights. *FMC Corp.*, 498 U.S. at 65, 111 S.Ct. at 411, 112 L.Ed.2d at 369. In reaching this holding, the Court noted that

> [t]o require plan providers to design their programs in an environment of differing state regulations would complicate the ad-

---

**3.** The arbitrary and capricious standard only applies if the plan gives the administrator discretion to construe its provisions. *Firestone Tire &*

*Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80, 95 (1989).

ministration of nationwide plans, producing inefficiencies that employers might offset with decreased benefits.... Thus, where a "patchwork scheme of regulation would introduce considerable inefficiencies in benefit program operation," we have applied the preemption clause to ensure that benefit plans will be governed by only a single set of regulations....

*Id.* at 60, 111 S.Ct. at 408, 112 L.Ed.2d at 365 (citations omitted). Simply put, "if the plan is uninsured" (like the Plan in this case), "the State may not regulate it." *Id.* at 64, 111 S.Ct. at 411, 112 L.Ed.2d at 368.

Modeling a federal common law upon state subrogation law would fare no better. Such a federal common law "would hamper the 'calculat[ion] of uniform benefits nationwide,'" because "the states do not treat subrogation clauses identically." *Serembus,* 817 F.Supp. at 1421 (quoting *Cutting,* 820 F.Supp. at 1152 (quoting *FMC Corp.* 498 U.S. at 60, 111 S.Ct. at 409)). Creating a federal common law which looks to the law of the states for guidance would create a situation where "a plan's subrogation provision would be enforceable in one federal court but not another." *Serembus,* 817 F.Supp. at 1421 (quoting *Cutting,* 820 F.Supp. at 1152). The court explained further:

> In sum, if each state were permitted to apply its own law relating to subrogation as the federal common law, the congressional intent of ERISA would surely be subverted. ERISA's expansive preemptive provision would thereby be rendered meaningless. If Congress had intended to prohibit subrogation in the context of ERISA plans, it could have done so by including an anti-subrogation clause in the statute. Because ERISA does not expressly prohibit subrogation, the court must assume Congress intended to allow it.

*Serembus,* 817 F.Supp. at 1423. The interest in uniformity dictates that this court resist any temptation to apply state law as federal common law.

The interest in uniform rules governing ERISA plans also motivated the court's decision in *Murzyn v. Amoco Corp.,* No. 2:94–CV–188–RL (N.D.Ind. May 16, 1995). In that case, the district court refused to apply Indiana subrogation law as federal common law. The court refused to apply Indiana law even though the terms of the plan expressly adopted Indiana subrogation law. *See id.* at 4–5. The court reasoned that ERISA's primary concern with uniformity would not permit employee benefit plans to incorporate state law into its provisions even through the plan's express terms. *Id.* at 5–6. Thus, ERISA's preemptive power would not permit the application of Indiana's law on subrogation regardless of the vehicle used in the attempt. Neither a judge, by adopting state law as federal common law, nor the parties, by adopting state law in the express terms of the plan, could undercut the preemptive powers of ERISA. *See id.*

ERISA is a statute designed to impose federal, uniform standards on employee benefits plans. ERISA accomplishes this goal through its "expansive" preemption clause. Uniformity allows plan administrators to calculate costs and plan for the future. In addition, by exempting ERISA plans from various state regulations, ERISA assists in the efficient administration of employee benefit plans. This Court will not undercut those goals by adopting Indiana law as federal common law.

### III.

The Plaintiffs argue in the alternative that the Plan should bear a pro-rata share of the Plaintiffs' attorney's fees and litigation expenses. In other words, if the Court refuses to apply the Indiana statute as federal common law, alternate case law provides that a federal court, when confronted with the issue of subrogation rights of an ERISA plan, is compelled to reduce the subrogation lien to a proper amount which accounts for attorney's fees and litigation expenses. The Plaintiffs cite *Dugan v. Nickla,* 763 F.Supp. 981 (N.D.Ill.1991), in support of their position. The court in that case faced similar issues to the present case. In *Dugan,* a dispute had arisen between an employee benefits plan and one of its beneficiaries with respect to a subrogation clause in the plan. In the first part of the court's opinion, the court looked to the actual wording of the

plan's subrogation clause. It held that the plan's subrogation rights extended to any amount which the beneficiary recovered in a lawsuit regardless of whether that amount was designated as medical expenses or otherwise. Following the terms of the plan formed the basis of decision for the first half of the court's holding.

The second half of the court's holding dealt with attorney's fees. Although the wording of the plan made no mention of attorney's fees, the Court held that the plan's recovery under its subrogation clause should be reduced by an amount reflecting the plan's fair share of attorney's fees. The Court reasoned as follows:

> Had [the employee] not engaged an attorney and pursued his case, the Fund would not have recovered any of the benefits paid concerning [the employee's] knee surgery. Since the Fund benefits from [the employee's] pursuit of this case, one-third reduction of the Fund's share of the verdict fairly apportions the attorney's fee.

*Id.* at 984–85. The Court then reduced the plan's total recovery by one-third. *Id.* at 985.

In addition, the Plaintiffs cite *Cutting v. Jerome Foods, Inc.*, 820 F.Supp. 1146 (W.D.Wis.1991),[4] in support of their claim for a proportionate set off for attorney's fees. In that case, the district court was presented with the same two issues facing this Court. In *Cutting*, 820 F.Supp. 1146, the plaintiffs asked the court to apply a Wisconsin subrogation statute as federal common law. The court declined to do so, and instead, applied the terms of the plan. The court then considered the issue of attorney's fees on its own initiative. The court held that

> the Plan's reimbursement clause does not include amounts attributable to attorneys' fees incurred by plaintiffs in pursuit of their claim against [the negligent third party]. *See Dugan*, 763 F.Supp. at 984–85. Holding otherwise would allow defendant not only to reap the rewards of plaintiffs' legal action against [the negligent third party], but would allow it also to receive

attorneys' fees although it did not incur any legal costs in pursuing the claim against [the negligent third party].

*Id.* at 1155. The court then quoted *Dugan* and stated "if plaintiffs had not 'engaged an attorney and pursued [their] claim, the fund would not have recovered any of the benefits paid.'" *Id.* The court reduced the amount payable to the plan under its subrogation clause by an amount proportionate to the plaintiffs' attorney's fees. *Id.* at 1156.

Further support for this position is found in the case of *Serembus v. Mathwig*, 817 F.Supp. 1414 (E.D.Wis.1992). In *Serembus*, the court held that ERISA preempted Wisconsin's make whole subrogation rule. In addition, the court held that under ERISA the terms of the plan controlled instead of the state common law rule. *Id.* at 1423. The court then addressed the issue of attorney's fees. It held that the employee could reduce the amount she owed to the plan under the subrogation clause by an amount which fairly apportions the attorney's fees. The court cited *Dugan v. Nickla* and stated:

> Since the Fund benefits from defendant's pursuit of her claims, a one-third reduction of the Fund's subrogation amount of the settlement fairly apportions the attorney's fees.

*Serembus*, 817 F.Supp. at 1423. The court then reduced the subrogation amount by one-third and awarded the plan the remaining two-thirds. *Id.*

In support of its position, the Defendant cites *Land v. Chicago Truck Drivers, Helpers and Warehouse Union Health and Welfare Fund*, 25 F.3d 509 (7th Cir.1994). In that case, the court held that ERISA did not unconstitutionally delegate authority to preempt state law to private welfare benefit plans. The court also held that the plaintiff's attempt to challenge the plan's denial of benefits to him through the vehicle of a Section 1983 cause of action clearly warranted Rule 11 sanctions. In a section of its opinion entitled "I. BACKGROUND" the court explained the facts of the case and the Plain-

---

4. The district court's opinion in *Cutting*, 820 F.Supp. 1146, was affirmed by the Court of Appeals. *See Cutting*, 993 F.2d 1293. The decision of the Court of Appeals, however, did not address the issue of attorney's fees.

tiff's claims. The court set out the factual scenario as follows:

> Land's first claim for relief was based on 42 U.S.C. § 1983. Land alleged that he had been involved in an automobile accident, that he had sued the other party to the accident in the Circuit Court of Cook County, Illinois, and that he had received $182,500.00 in a settlement of that suit. Land maintained that the settlement did not fully compensate for his injuries, although he conceded that a portion of the settlement was intended to cover $42,604.92 that the fund ·had advanced for Land's medical expenses. The ERISA plan under which those benefits were paid obligates Land to reimburse the fund for covered expenses if he is subsequently compensated by a third party. *Land acknowledged the fund's right to reimbursement but maintained that its recovery should be discounted to reflect the legal fees he incurred in procuring the settlement. Specifically, Land contended that under Illinois subrogation law, he would be entitled to reduce the fund's reimbursement by one-third.... Because ERISA supersedes any and all state laws relating to covered plans, however, (see 29 U.S.C. § 1144(a)), this Illinois doctrine is not available to Land, and the terms of the plan require reimbursement of the entire amount without the deduction of any attorney's fees.*

*Id.* at 511. Later, the Seventh Circuit explained the legal terrain surrounding the plaintiff's constitutional and § 1983 claims. The court stated:

> *Holliday* would therefore require that we reject any argument that Illinois law should apply here to reduce the amount owed the Fund ..., and Land does not advance such a claim.[5] He instead takes a more creative approach....

*Id.* at 512–13. The Defendant cites these portions of the *Land* decision in support of its argument that the Defendant's rights of subrogation should not be reduced by an amount proportionate to the Plaintiff's attorney's fees incurred in making the recovery.

The legal terrain with respect to attorney fees is thus an arduous (and facially contradictory) journey. In *Dugan, Cutting* and *Serembus,* district courts in the Seventh Circuit used their inherent authority to award a credit for attorney's fees on the underlying claim. In seeming contradiction with these cases, is the Seventh Circuit's opinion in *Land.* The Seventh Circuit took a cursory glance at the attorney fees issue and refused to apply an Illinois statute which allowed a credit for attorney's fees as federal common law. *Dugan, Cutting* and *Serembus* are district court opinions, while *Land* comes from the Court of Appeals. *Land,* therefore, has greater weight than do the district court opinions. In addition, the *Land* opinion came after all of the district court opinions. The statement in *Land* concerning attorney fees should control if this Court only considered the timing of the opinions and the relative authority of the issuing courts.

This Court's attempt to follow precedent with respect to attorney fees, however, is not that simple because the court's statement in *Land* is dicta. Neither of the court's two holdings in that case had any relation to the court's statement regarding attorney's fees. The statement merely presented unlitigated issues which set the stage for the real disputes litigated in that case, namely, the constitutionality of ERISA and Rule 11 sanctions. Further evidence of this fact is found in the dearth of citations and analysis which a holding of this nature would require. The first statement appeared in the beginning of opinion in a section called "Background." The court directed its second statement against "any argument" that state law should apply to reduce the amount owed the fund. *Land,* 25 F.3d at 513. In support of this statement, the Seventh Circuit cited its own opinion in *Cutting,* 993 F.2d 1293, an opinion which, conspicuously, did not address the attorney's fees issue.[6] In so doing, the court

---

5. Land did not even advance this claim at the district court level. *See Land v. Chicago Truck Drivers, Helpers and Warehouse Workers Union,* 1993 WL 153910 (N.D.Ill.1993) (unpublished opinion).

6. The failure to address the attorney's fees issue is conspicuous because the district court addressed the issue in its opinion. *See supra* note 3.

revealed that it was mostly concerned with preventing Illinois state law from applying to ERISA based plans. The court did not consider whether or not the court could award a proportional credit for attorney's fees that did not rely on state statutory law for its authority. Each of the courts in *Dugan, Cutting,* and *Serembus* grounded their opinions on the inherent and equitable authority of the court to determine what is fair. They did not apply state statutory law in any of those instances.[7] The Seventh Circuit never considered a district court's grant of a credit for attorney fees based on the Court's inherent lawmaking authority. The Seventh Circuit never overturned the opinions awarding attorney fees in *Dugan, Cutting* and *Serembus.* Indeed, the Seventh Circuit never mentioned these cases. Since the Seventh Circuit's statements in *Land* are pure dicta, they will not control the outcome of this case. Instead, this Court will follow the holdings and the reasoning of the district courts in *Dugan, Cutting* and *Serembus.*

Therefore, the Plaintiffs are entitled to reduce the sum they owe the Defendant under the Plan's subrogation clause by one-third—an amount which represents a fair portion of the attorney's fees incurred in settling the underlying claim.

### IV.

Federal law regarding the subrogation rights of ERISA-based plans favors the plan's right to full recovery of any amounts forwarded to cover a claimant's medical expenses or disability benefits. Any attempt to apply state law in this area subjects plans to multiple and different regulations. A plan's exposure to a multiplicity of state regulations reduces its ability to calculate costs and plan for the future. The purpose of ERISA's expansive preemption clause is to promote uniformity in the area of employee benefit plans. Uniformity brings with it efficiency, the ability to calculate costs and the ability to plan for the future. This Court rejects the Plaintiffs request to apply Ind.Code 34–4–33–

12 as federal common law. Applying state law as federal common law would only undercut ERISA's goals for uniformity. The Plaintiffs are not entitled to reduce the amount owed to the Plan under the subrogation clause by the percentage of the Plaintiffs' comparative negligence.

The Plaintiffs are entitled to a credit for their attorney's fees. If the Plaintiffs had not engaged an attorney in the underlying settlement, the Plan would not have any recovery over which to exercise its subrogation rights. It is only fair that the Plan pay its fair share for the Plaintiffs recovery on its behalf. Therefore, the Plaintiffs are entitled to reduce the amount they owe under the Plan's subrogation clause by one-third plus a proportionate amount of the litigation expenses.

For the foregoing reasons, the Court hereby GRANTS the Defendant's Motion for Summary Judgment in part and GRANTS the Plaintiffs Motion for Summary Judgment in part. The Defendant's Motion to Strike Portions of the Affidavit of L. Charles Lukmann, III is MOOT. The Plaintiff is ordered to pay Defendant the sum of $11,523.31.

SO ORDERED.

---

7. It is true that Ind.Code 34–4–33–12 states that "the party holding [the subrogation right] shall bear a pro rata share of the claimant's attorney's fees and litigation expenses." The Plaintiffs do not ask this court to apply the statute nor the case law interpreting the statue. Instead, the Plaintiffs rely on federal district court opinions which did not (and could not) rely on this statute for guidance.