NOTICE: Under Supreme Court Rule 367 a party has 21 days after

the filing of the opinion to request a rehearing. Also, opinions

are subject to modification, correction or withdrawal at anytime

prior to issuance of the mandate by the Clerk of the Court.

Therefore, because the following slip opinion is being made

available prior to the Court's final action in this matter, it

cannot be considered the final decision of the Court. The

official copy of the following opinion will be published by the

Supreme Court's Reporter of Decisions in the Official Reports

advance sheets following final action by the Court.

                                    

                 Docket No. 79686--Agenda 18--May 1996.

         RANDY SCHOLTENS, Appellee, v. JEFFREY SCHNEIDER et al.

               (Electrical Insurance Trustees, Appellant).

                    Opinion filed September 19, 1996.

     CHIEF JUSTICE BILANDIC delivered the opinion of the court:

     Electrical Insurance Trustees (Trustees) appeal from an

appellate court judgment that affirmed a circuit court order

holding the Trustees liable under the common fund doctrine for

attorney fees and costs expended in recouping the Trustees'

subrogation lien. The Trustees claim that section 514 of the

Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C.

§1144 (1982)) preempts application of the common fund doctrine to

self-funded employee welfare benefit plans. We hold that ERISA does

not preempt application of the common fund doctrine.

     The plaintiff, Randy Scholtens, an electrician, was a

participant in an employee benefit plan as a member of the Illinois

Brotherhood of Electrical Workers, Local 134. It is undisputed that

the plan is a welfare benefit plan within the meaning of ERISA (29

U.S.C. §1001 et seq. (1982)). The appellant, Trustees, administers

the plan pursuant to a trust agreement between Local 134 and the

Electrical Contractor Association of the City of Chicago. The plan

is a self-funded benefit plan which provides medical and disability

benefits to union electrical workers.

     On December 22, 1989, Scholtens was injured in a non-work-

related automobile accident. The accident occurred when a vehicle

in which Scholtens was a passenger was struck by another vehicle.

Scholtens' injuries required hospitalization and surgery. Pursuant

to the plan, the Trustees paid medical bills and disability

benefits totalling $42,921.75 to Scholtens for those injuries.

     Scholtens subsequently retained an attorney to pursue a cause

of action for damages arising out of the automobile accident.

Scholtens filed a lawsuit against the two drivers involved in the

accident, Jeffrey Schneider and L.C. O'Banner. Prior to trial,

Scholtens settled his claim against the two defendants for

$100,000.

     The Trustees never made an independent effort to seek

reimbursement of the benefits paid to Scholtens from Schneider or

O'Banner, nor did they attempt to intervene in Scholtens' pending

litigation against those defendants. Following Scholtens'

settlement of the lawsuit, however, the Trustees demanded full

reimbursement of all of the benefits paid to Scholtens. The

Trustees premised their demand on the subrogation clause contained

in the benefit plan and a subrogation agreement that Scholtens

signed on January 3, 1990, shortly after the accident.

     The subrogation clause, which appears in the booklet

explaining plan benefits to participants, provided:

          "In some circumstances, such as an automobile accident,

          a third party may ultimately pay medical expenses for you

          or an enrolled dependent through an insurance settlement

          or otherwise. In that case, you must reimburse benefits

          paid by the Plans to the extent they are paid by the

          third party."

The subrogation agreement that Scholtens signed after his accident

provided, in part:

          "The undersigned hereby agrees, in consideration of money

          paid or to be paid by the Electrical Insurance Trustees

          to me as an employee under a Plan of benefits maintained

          by the Trustees, or to another on my behalf as such

          employee, because of loss or damage for which I or my

          dependent may have a cause of action against a third

          party who caused this loss or damage, the Trustees shall

          be subrogated, to the extent of such payment, to any and

          all recovery by me or my dependent, and such right shall

          be assigned to the Trustees by me as a condition of the

          payment of such money by the Trustees."

     Faced with the demand for complete reimbursement by the

Trustees, Scholtens' attorney filed a petition to adjudicate the

Trustees' subrogation lien in the court where Scholtens' tort

action was pending. The trial court applied the common fund

doctrine and directed that the amount Scholtens owed to the

Trustees would be reduced in accordance with the attorney fees and

costs incurred in the litigation from $42,921.75 to $28,286.76. The

trial court stated that it did not adjudicate the Trustees' rights

under the terms of either the ERISA plan or the subrogation

agreement, but simply applied the common fund doctrine to the facts

before it.

     The appellate court affirmed, rejecting the Trustees' claim

that ERISA preempted the application of the common fund doctrine.

We allowed the Trustees' petition for leave to appeal. 155 Ill. 2d

R. 315. Amicus briefs were filed on behalf of both the appellant

and the appellee.

                                 ANALYSIS

     The issue in this appeal is whether section 514 of ERISA (29

U.S.C. §1144 (1982)) preempts application of the common fund

doctrine to self-funded employee benefit plans. The question of

whether a federal statute, such as ERISA, preempts a particular

state law is one of congressional intent. Metropolitan Life

Insurance Co. v. Massachusetts, 471 U.S. 724, 738, 85 L. Ed. 2d

728, 739, 105 S. Ct. 2380, 2388 (1985). Congress' intent to preempt

state law may be explicitly stated in the statute's language or

implicitly contained in its structure and purpose. Shaw v. Delta

Air Lines, Inc., 463 U.S. 85, 95, 77 L. Ed. 2d 490, 500, 103 S. Ct.

2890, 2900 (1983). In analyzing claims of preemption, however, the

Supreme Court has "never assumed lightly that Congress has

derogated state regulation." New York State Conference of Blue

Cross & Blue Shield Plans v. Travelers Insurance Co., 514 U.S. ___,

131 L. Ed. 2d 695, 704, 115 S. Ct. 1671, 1676 (1995). Instead, the

Court instructs that the analysis should begin with the presumption

that Congress did not intend to supplant state law. Travelers, 514

U.S. at ___, 131 L. Ed. 2d at 704, 115 S. Ct. at 1676.

     In ascertaining congressional intent, the inquiry necessarily

begins with an analysis of the language of the statute. Travelers,

514 U.S. at ___, 131 L. Ed. 2d at 705, 115 S. Ct. at 1677. The text

of ERISA's preemption provision, section 514(a), is expansive.

Section 514(a) provides, with some exceptions not relevant here,

that:

          "the provisions of this subchapter and subchapter III of

          this chapter shall supersede any and all State laws

          insofar as they may now or hereafter RELATE TO any

          employee benefit plan." (Emphasis added.) 29 U.S.C.

          §1144(a) (1982).

     A brief discussion of the manner in which the Supreme Court

has interpreted this provision and the progression of law relating

thereto is helpful in resolving the question presented here.

                                     A

     Prior to 1995, the Supreme Court cases analyzing preemption

claims under ERISA relied heavily upon the language of the

preemption provision and dictionary definitions of the phrase

"relate to" as the primary guides to determining whether a

particular state law was preempted. While acknowledging that

ERISA's preemption provisions were not models of legislative

drafting, the Supreme Court found that section 514(a) was

"conspicuous for its breadth." FMC Corp. v. Holliday, 498 U.S. 52,

58, 112 L. Ed. 2d 356, 364, 111 S. Ct. 403, 407 (1990). The Court

rejected an attempt to limit the scope of preemption to state laws

relating to specific subjects covered by ERISA or specifically

designed to affect employee benefit plans. Shaw, 463 U.S. at 98, 77

L. Ed. 2d at 501, 103 S. Ct. at 2900. Instead, the Court stated

that the phrase "relate to" must be given a " `broad common-sense

meaning,' " Metropolitan Life Insurance Co., 471 U.S. at 739, 85 L.

Ed. 2d at 740, 105 S. Ct. at 2389, and that a state law "relates

to" an employee benefit plan "in the normal sense of the phrase, if

it has a connection with or reference to such a plan." Shaw, 463

U.S. at 96-97, 77 L. Ed. 2d at 501, 103 S. Ct. at 2900. 

     For more than one decade, the Court relied upon the text of

section 514(a) and, particularly, this definition of the phrase

"relate to" as the basis for deciding preemption claims. Applying

this analysis, the Court determined that any state law which

singles out plans encompassed by ERISA for special treatment

"relates to" such plans and is preempted, even if consistent with

ERISA's substantive requirements. Mackey v. Lanier Collections

Agency & Service, Inc., 486 U.S. 825, 829, 100 L. Ed. 2d 836, 843-

44, 108 S. Ct. 2182, 2185 (1988) (garnishment statute that

specifically referred to ERISA plans was preempted, but general

garnishment statute did not "relate to" ERISA plans and was not

preempted). The Court also determined that a state law may "relate

to" an employee benefit plan " `even if the law is not specifically

designed to affect such plans, or the effect is only indirect.' "

District of Columbia v. Greater Washington Board of Trade, 506 U.S.

125, 130, 121 L. Ed. 2d 513, 520, 113 S. Ct. 580, 583 (1992),

quoting Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 139, 112 L.

Ed. 2d 474, 484, 111 S. Ct. 478, 483. Accordingly, state laws that

required that employee benefits plans be structured in a particular

manner were found to "relate to" such plans and were preempted.

See, e.g., Shaw, 463 U.S. at 96-97, 77 L. Ed. 2d at 501, 103 S. Ct.

at 2900 (state statute that prohibited discrimination against

pregnancy and thereby mandated that employers structure their

benefit plans to cover pregnancy-related disability, "related to"

benefit plans and was preempted); FMC Corp. v. Holliday, 498 U.S.

52, 58, 112 L. Ed. 2d 356, 364, 111 S. Ct. 403, 407-08 (1990)

(state statute that prohibited benefit plans from enforcing

subrogation liens in actions involving motor vehicle accidents

"relate[d] to" benefit plans and was preempted). The Court

cautioned, however, that the scope of the preemption provision was

not unlimited and that "[s]ome state actions may affect employee

benefit plans in too tenuous, remote, or peripheral a manner to

warrant a finding that the law `relates to' the plan." Shaw, 463

U.S. at 100 n.21, 77 L. Ed. 2d at 503 n.21, 103 S. Ct. at 2901

n.21.

     In its most recent decision interpreting ERISA's preemption

clause, however, the Supreme Court expressed exasperation with this

strictly textual approach. In New York State Conference of Blue

Cross & Blue Shield Plans v. Travelers Insurance Co., 514 U.S. ___,

131 L. Ed. 2d 695, 115 S. Ct. 1671 (1995), the Court questioned

whether the words of limitation in section 514(a) ("insofar as they

. . . relate") did much limiting, and cautioned that "[i]f `relate

to' were taken to extend to the furthest stretch of its

indeterminacy, then for all practical purposes preemption would

never run its course, for `really, universally, relations stop

nowhere.' " Travelers, 514 U.S. at ___, 131 L. Ed. 2d at 705, 115

S. Ct. at 1677, quoting H. James, Roderick Hudson xli (New York

ed., World's Classics (1980)). The Court stressed that such an

expansive interpretation of the preemption clause would "read

Congress's words of limitation as mere sham, and *** read the

presumption against pre-emption out of the law whenever Congress

speaks to the matter with generality." Travelers, 514 U.S. at ___,

131 L. Ed. 2d at 705, 115 S. Ct. at 1677. Having determined that

"infinite relations cannot be the measure of pre-emption"

(Travelers, 514 U.S. at ___, 131 L. Ed. 2d at 705, 115 S. Ct. at

1677), the Court concluded:

          "We simply must go beyond the unhelpful text and the

          frustrating difficulty of defining its key term, and look

          instead to the objectives of the ERISA statute as a guide

          to the scope of the state law that Congress understood

          would survive." Travelers, 514 U.S. at ___, 131 L. Ed. 2d

          at 705, 115 S. Ct. at 1677.

     Travelers therefore announced a fundamental shift in emphasis

away from mere interpretation of the words of ERISA's preemption

provision toward an analysis of Congress' objectives in enacting

ERISA. Accordingly, in considering whether section 514(a) preempts

application of the common fund doctrine to self-funded ERISA

benefit plans, we must consider not only the language of the

preemption provision, but also the structure and purpose of the

statute as a whole.

     Congress enacted ERISA for the express purpose of providing

safeguards to protect the interests of participants in employee

benefit plans. 29 U.S.C. §1001(b) (1982). Congress determined that

"the soundness and stability of plans with respect to adequate

funds to pay promised benefits may be endangered" because of a lack

of uniformity in the regulation of such plans. Accordingly,

Congress enacted a comprehensive statute that subjects plans

providing employees with fringe benefits to federal regulation.

Shaw, 463 U.S. at 90, 77 L. Ed. 2d at 497, 103 S. Ct. at 2896. The

statute imposes participation, funding, and vesting requirements on

pension plans (29 U.S.C. §§1051 through 1086 (1982)) and sets

uniform standards, including rules concerning reporting, disclosure

and fiduciary responsibility for both pension and welfare benefit

plans (29 U.S.C. §§1021 through 1031, 1101 through 1114 (1982)).

ERISA does not require employers to provide any particular benefits

to employees and does not speak on the subject of subrogation. The

statute does not require, bar or regulate the content of

subrogation clauses in welfare benefit plans.

     In Travelers, the Court explored the specific question of

congressional intent as it relates to the enactment of ERISA's

preemption clause. Section 514(a) of ERISA (29 U.S.C. §1144(a)

(1982)) reflects Congress' intent to establish regulation of

employee benefit plans as an exclusively federal concern. The Court

noted that the purpose of section 514(a) is to insure that the

administrative practices concerning employee benefit plans are

governed by a uniform body of benefit law, in order to minimize the

administrative and financial burden that employers would face if

required to comply with conflicting directives among states or

between states and the federal government. Congress recognized that

obligating an employer to satisfy the varied and perhaps

conflicting requirements of particular state laws regulating

employee benefits would make administration of a nationwide benefit

plan more difficult and inefficient, which might lead employers

with existing employee benefit plans to reduce benefits and lead

employers without such plans to refrain from adopting them. Fort

Halifax Packing Co. v. Coyne, 482 U.S. 1, 96 L. Ed. 2d 1, 107 S.

Ct. 2211 (1987). Thus, the basic purpose of the preemption

provision in ERISA (29 U.S.C. §1144(a) (1982)) is to "avoid a

multiplicity of regulation in order to permit the nationally

uniform administration of employee benefit plans." Travelers, 514

U.S. at ___, 131 L. Ed. 2d at 706, 115 S. Ct. at 1677-78.

                                     B

     With these general principles in mind, we consider whether

section 514(a) of ERISA preempts application of the Illinois common

fund doctrine. We first utilize the textual approach. Under this

approach, a law that "relates to" benefit plans, in that it "refers

to or has a connection to" such plans, is preempted.

     In determining whether the common fund doctrine "refers to or

has a connection to" ERISA plans, it is necessary to briefly

discuss the nature of that doctrine. In general, each party to

litigation in the United States bears its own attorney fees, absent

a specific fee-shifting statute. Over time, courts have created

several equitable exceptions to this "American Rule." One of the

earliest, and most prevalent, exceptions is the common fund

doctrine. This doctrine has been recognized and applied in the

United States Supreme Court, the lower federal courts, and in the

courts of virtually every state in the Union, including Illinois.

See Baier v. State Farm Insurance Co., 66 Ill. 2d 119 (1977);

Sprague v. Ticonic National Bank, 307 U.S. 161, 164, 83 L. Ed.

1184, 1186, 59 S. Ct. 777, 779 (1939) (fee award from fund

generated in class action is within "the historic equity

jurisdiction of the federal courts"); see generally 42 A.L.R. Fed.

134 (1979); 23 A.L.R.5th 241 (1994); S. Speiser, Attorneys' Fees

(1973).

     The common fund doctrine permits a party who creates,

preserves, or increases the value of a fund in which others have an

ownership interest to be reimbursed from that fund for litigation

expenses incurred, including counsel fees. Brundidge v. Glendale

Federal Bank, F.S.B., 168 Ill. 2d 235 (1995). It is now well

established that "a litigant or a lawyer who recovers a common fund

for the benefit of persons other than himself or his client is

entitled to a reasonable attorney's fee from the fund as a whole."

Boeing Co. v. Van Gemert, 444 U.S. 472, 478, 62 L. Ed. 2d 676, 681,

100 S. Ct. 745, 749 (1980). The underlying justification for

reimbursing attorneys from a common fund, as explained by the

United States Supreme Court in three early cases, is that, unless

the costs of litigation are spread to the beneficiaries of the

fund, they will be unjustly enriched by the attorney's efforts. See

Sprague, 307 U.S. at 166-67, 83 L. Ed. at 1187, 59 S. Ct. at 779-

80; Central R.R. & Banking Co. v. Pettus, 113 U.S. 116, 126-27, 28

L. Ed. 915, 919, 5 S. Ct. 387, 392-93 (1885); Trustees of the

Internal Improvement Fund v. Greenough, 105 U.S. 527, 532, 26 L.

Ed. 1157, 1160 (1882); see also Ryan v. City of Chicago, 274 Ill.

App. 3d 913 (1995).

     The common fund doctrine is a common law rule of general

application. It does not single out or expressly refer to ERISA

plans, nor is it predicated upon their existence. It applies

generally to all funds created, increased or preserved by a party

in which others have an ownership interest. In this respect, the

common fund doctrine is similar to the other laws of general

applicability that the Supreme Court has held affect employee

benefit plans in too tenuous, remote or peripheral a manner to

warrant a finding that the law "relates to" the plan. For example,

in Mackey v. Lanier Collections Agency & Service, Inc., 486 U.S.

825, 100 L. Ed. 2d 836, 108 S. Ct. 2182 (1988), the Supreme Court

held that a general state garnishment statute did not "relate to"

employee benefit plans and fell outside the scope of ERISA's

preemption provision. In reaching this conclusion, the Court found

that Congress did not intend to forbid the use of generally

applicable state-law mechanisms of executing judgments against

ERISA welfare benefit plans. Mackey, 486 U.S. at 831, 100 L. Ed. 2d

at 845, 108 S. Ct. at 2186; cf. Greater Washington Board of Trade,

506 U.S. at 130, 121 L. Ed. 2d at 520, 113 S. Ct. at 583 (striking

down District of Columbia law that "specifically refers to welfare

benefit plans regulated by ERISA and on that basis alone is pre-

empted").

     Although the common fund doctrine does not expressly refer to

ERISA plans, our inquiry cannot end here. Travelers instructs

courts to go beyond the unhelpful text of section 514(a) and look

instead to the purposes of ERISA as a guide to determining whether

a particular state law is preempted. Travelers, 514 U.S. ___, 131

L. Ed. 2d 695, 115 S. Ct. 1671. Thus, we must inquire whether

preemption would serve the basic purpose of section 514(a), namely,

"to avoid a multiplicity of regulation in order to permit the

nationally uniform administration of employee benefit plans."

Travelers, 514 U.S. at ___, 131 L. Ed. 2d at 706, 115 S. Ct. at

1677-78.

                                     1

     The Trustees and amici argue that the common fund doctrine

frustrates this goal for two reasons. First, they claim that

application of the common fund doctrine frustrates uniform

administration of nationwide benefit plans because it prevents plan

administrators in Illinois from enforcing the subrogation rights

which are part of written plan agreements. They argue that the

common fund doctrine is, in substance, an antisubrogation law

similar to the Pennsylvania statute the Supreme Court held was

preempted by ERISA in FMC Corp. v. Holliday.

     We note initially that the Trustees' characterization of the

common fund doctrine as a law unique to Illinois is misguided. As

earlier discussed, the common fund doctrine has been recognized and

applied in the United States Supreme Court, the lower federal

courts, and in courts of virtually every state. Accordingly, the

Trustees' portrayal of the common fund doctrine as a law restricted

to Illinois is not persuasive. Rather, the law, like the general

garnishment statute at issue in Mackey, exists in some form

throughout the nation.

     The common fund doctrine has, in fact, been applied in a

number of federal cases involving ERISA plans. See, e.g., Carpenter

v. Modern Drop Forge Co., 919 F. Supp. 1198 (N.D. Ind. 1995); Dugan

v. Nickla, 763 F. Supp. 981 (N.D. Ill. 1991); Serembus v. Mathwig,

817 F. Supp. 1414 (E.D. Wis. 1992); Cutting v. Jerome Foods, Inc.,

820 F. Supp. 1146 (W.D. Wis. 1991). These courts applied the common

fund doctrine as a matter of federal common law and required ERISA

benefit plans to pay for legal services rendered in protecting the

plan's subrogation lien. But see Ryan v. Federal Express Corp., 78

F.3d 123 (3d Cir. 1996) (refusing to require ERISA plan to pay a

proportionate share of attorney fees in recovering subrogation

liens as a matter of federal common law).

     We are also unpersuaded by the Trustees' characterization of

the common fund doctrine as an antisubrogation law similar to that

found preempted in FMC Corp. v. Holliday. Although the common fund

doctrine may be invoked in actions involving subrogation liens, it

cannot appropriately be characterized as an "antisubrogation" law.

On the contrary, the common fund doctrine has been applied in many

types of cases covering a large range of civil litigation. S.

Speiser, Attorney Fees §11.13, at 417 (1973). The doctrine is most

frequently applied in class actions brought by, and on behalf of,

creditors, taxpayers, public utility customers, trust

beneficiaries, decedents' estates, labor union members, and

shareholders of corporations. See S. Speiser, Attorney Fees §§11.13

through 11.21 (1973) (and cases cited therein); see also Boeing Co.

v. Van Gemert, 444 U.S. 472, 62 L. Ed. 2d 676, 100 S. Ct. 745

(1980) (class action by bondholders against corporation); Mills v.

Electric Auto-Lite Co., 396 U.S. 375, 396-97, 24 L. Ed. 2d 593,

609, 90 S. Ct. 616, 628 (1970) (stockholder's derivative action);

Sprague v. Ticonic National Bank, 307 U.S. 161, 164, 83 L. Ed.

1184, 1185-86, 59 S. Ct. 777, 779 (1939) (action to protect a trust

fund); Brundidge v. Glendale Federal Bank, 168 Ill. 2d 235 (1995).

     Moreover, the common fund doctrine bears no resemblance to the

Pennsylvania antisubrogation statute at issue in FMC Corp. v.

Holliday. That statute prohibited plans from requiring

reimbursement of medical expenses from beneficiaries who recovered

from third-party tortfeasors in actions arising out of motor

vehicle accidents. The statute conflicted with a subrogation clause

contained in a self-funded employee welfare benefit plan that

required plan members to reimburse benefits paid to a plan member

if the member recovered from a third-party tortfeasor. The Supreme

Court held that the Pennsylvania statute "relate[d] to" an employee

benefit plan and was thereby preempted. FMC Corp., 498 U.S. at 58,

112 L. Ed. 2d at 364, 111 S. Ct. at 407. The statute required plan

providers in Pennsylvania to calculate benefit levels based on

expected liability conditions that differed from those in states

that had not enacted similar antisubrogation legislation. FMC

Corp., 498 U.S. at 60, 112 L. Ed. 2d at 365, 111 S. Ct. at 408-09.

The Court found that application of different state subrogation

laws to plans would frustrate plan administrators' continuing

obligation to calculate uniform benefit levels nationwide. FMC

Corp., 498 U.S. at 60, 112 L. Ed. 2d at 365-66, 111 S. Ct. at 408-

09.

     In contrast to the state statute at issue in FMC Corp. v.

Holliday, the common fund doctrine does not prohibit employers from

structuring their employee benefit plans to require reimbursement

of subrogation liens. Scholtens specifically acknowledges the

Trustees' right to subrogation under both the benefit plan and the

subrogation agreement. He does not seek to modify or avoid his

obligation to reimburse the plan for benefits paid to him and does

not question the right of the trustees to collect under the

subrogation clause. Moreover, nothing in the trial court's decision

relieved Scholtens of his obligation to comply with the terms of

the subrogation agreement. In fact, the trial court specifically

stated that it did not adjudicate the Trustees' rights under the

terms of either the ERISA plan or the subrogation agreement.

     The Trustees nevertheless maintain that application of the

common fund doctrine in effect requires plan administrators to

structure plans to cover attorney fees incurred by beneficiaries in

personal injury cases. We disagree. We find that the common fund

doctrine does not dictate or restrict the manner in which ERISA

plans are structured or administered. 

     An employee benefit plan is in the nature of a contractual

agreement between the employer, the plan and its fiduciaries, and

the participants and beneficiaries. The claim for attorney fees at

issue here did not arise out of that contractual agreement or any

separate subrogation agreement executed between the Trustees and

Scholtens. Rather, the claim for attorney fees arises independently

of both the benefit plan and the subrogation agreement. Here, the

attorney who represented Scholtens in his tort action, and who

negotiated the settlement and obtained the proceeds from which the

plan's subrogation lien will be paid, simply invoked his quasi-

contractual right to payment of fees for services rendered in

recovering the plan's subrogation lien. The quasi-contractual

obligation he seeks to impose upon the Trustees arises

independently of the benefit plan, resting instead upon equitable

considerations of quantum meruit and the prevention of unjust

enrichment. Accordingly, applying the common fund doctrine under

the circumstances of this case does not alter the relationship or

agreements formulated among the principal ERISA entities (e.g., the

employer, the plan fiduciaries, and the participants). It affects

the relations between one of those entities (i.e., the Trustees)

and an outside party. In effect, the attorney who performed legal

services that ultimately led to the recovery of the plan's

subrogation lien instituted a separate and distinct action against

the Trustees for unpaid fees. The action, in substance if not in

form, is wholly independent of and unrelated to the underlying

benefit plan. We conclude, therefore, that the common fund doctrine

does not dictate or restrict the manner in which ERISA plans are

structured or administered.

     Supporting this conclusion is this court's decision in Baier

v. State Farm Insurance Co., 66 Ill. 2d 119 (1977). In Baier, the

plaintiff, an attorney, represented a motorist in a claim for

damages arising out of an automobile accident. The attorney

ultimately negotiated a settlement of $12,000 between the injured

motorist and the tortfeasor. The injured motorist used a portion of

the settlement proceeds to reimburse State Farm, pursuant to a

subrogation agreement, for $1,000 in medical benefits State Farm

had paid the motorist following the accident. Following dismissal

of the negligence action, the attorney brought a separate action

against State Farm to recover a fee for the services he performed

in recovering State Farm's subrogation lien. In that case, as here,

there was no allegation that there was a contract of employment,

express or implied, between the attorney and State Farm. Rather,

the claim for fees was based on the equitable concept that an

attorney who performs services in creating a fund should, in equity

and good conscience, be allowed compensation from all those who

seek to benefit from the fund recovered. Baier, 66 Ill. 2d at 124.

     In applying the common fund doctrine, the Baier court

specifically rejected State Farm's claim that application of the

doctrine would violate the subrogation agreement between the

insured motorist and State Farm. Baier, 66 Ill. 2d at 126. Like the

Baier court, we find that the quasi-contractual obligation to pay

fees in this case arises wholly independently of, and is unrelated

to, both the subrogation clause in the ERISA plan and the

contractual subrogation agreement that Scholtens signed after the

accident. The common fund doctrine is invoked by someone who is not

a party to the contractual agreement between the plan and its

beneficiaries to recover an unpaid debt, namely, a reasonable fee

in quantum meruit for legal services rendered to the plan and its

Trustees. 

     The Supreme Court has recognized that such actions are not

preempted by ERISA in Mackey, 486 U.S. at 833, 100 L. Ed. 2d at

846, 108 S. Ct. at 2187. The Mackey Court explained:

               "These cases--lawsuits against ERISA plans for run-

          of-the-mill state-law claims such as unpaid rent, failure

          to pay creditors, or even torts committed by an ERISA

          plan--are relatively commonplace. Petitioners and the

          United States (appearing here as amicus curiae) concede

          that these suits, although obviously affecting and

          involving ERISA plans and their trustees, are not pre-

          empted by ERISA §514(a)."

In a footnote, the Court cited a number of cases, including one

case involving a suit against an ERISA plan for unpaid attorney

fees. Mackey, 486 U.S. at 833 n.8, 100 L. Ed. 2d at 846 n.8, 108 S.

Ct. at 2187 n.8, citing Luxemburg v. Hotel & Restaurant Employees

& Bartenders International Union Pension Fund, 91 Misc. 2d 930, 398

N.Y.S.2d 589 (1977). Luxemburg allowed an attorney to recover

unpaid legal fees from an ERISA plan. Although the suit for unpaid

attorney fees in Luxemburg was based upon an express contract,

while the present action is quasi-contractual in nature, this

factual distinction is not relevant to the preemption question

raised here. The present suit is equivalent to an action to force

an ERISA plan to pay for telephone services or rent. ERISA does not

require the creation of a fully insulated legal world that renders

all state law preempted whenever there is a plan in the picture.

United Wire, Metal & Machine Health & Welfare Fund v. Morristown

Memorial Hospital, 995 F.2d 1179, 1193 (3d Cir. 1993).

                                     2

     The Trustees next claim that the common fund doctrine disrupts

the uniform administration of ERISA plans and is thereby preempted

because application of the doctrine will significantly increase

plan costs. The Trustees have offered no proof in support of this

claim, however, and we believe that precisely the opposite result

is likely. The Trustees conceded in oral argument that they do not

generally bring an independent action against third-party

tortfeasors to recover subrogation liens. Instead, they rely upon

the cooperative efforts of injured beneficiaries in suing

tortfeasors as the exclusive means of obtaining reimbursement of

benefits paid to beneficiaries. Holding that the common fund

doctrine is preempted would, in at least some instances, destroy

any incentive plan beneficiaries might have to bring independent

actions against tortfeasors and, thus, ultimately increase plan

costs.

     Assume, for instance, that an ERISA plan pays a participant

medical benefits totalling $10,000, and the participant ultimately

obtains a settlement award of $15,000 from a responsible third

party. Under these facts, $10,000 of the settlement proceeds would

be paid to the ERISA plan. Assuming a standard one-third

contingency fee agreement, the injured worker's attorney would be

entitled to the remaining $5,000. At least some plan beneficiaries

would not be willing to file an independent civil suit that would

result in no benefit to them. Requiring ERISA plans to pay attorney

fees under the common fund doctrine, on the other hand, may

encourage beneficiaries to pursue independent actions against

tortfeasors. Because such actions ultimately result in

reimbursement of subrogation liens to ERISA plans, plan costs would

thereby be reduced.

     Even if we found, however, that application of the common fund

doctrine would increase plan costs, that finding would not

necessitate a conclusion that the law is preempted under ERISA. The

Supreme Court has held that the fact that a state law imposes

additional costs on ERISA plans, standing alone, is not a

sufficient basis for holding that the law is preempted. Travelers,

514 U.S. at ___, 131 L. Ed. 2d at 705, 115 S. Ct. at 1677; Mackey,

486 U.S. at 831, 100 L. Ed. 2d at 845, 108 S. Ct. at 2186.

     In Travelers, a New York statute imposed surcharges on

hospital bills of patients covered by commercial insurance and

health maintenance organizations (HMOs), but not on bills of

patients covered by Blue Cross/Blue Shield. The statute ultimately

resulted in a 24% surcharge on the bills of commercially insured

patients and a 9% surcharge on patients covered by HMOs. Several

commercial insurers who were acting as fiduciaries of ERISA plans

filed suit, arguing that the statute imposing the surcharges was

preempted by ERISA. The Second Circuit Court of Appeals agreed,

concluding that the surcharges "related to" ERISA plans because

they imposed a "significant economic burden" on such plans and

therefore exerted an impermissible impact on ERISA plan structure

and administration. Travelers Insurance Co. v. Cuomo, 14 F.3d 708,

721 (2d Cir. 1994).

     The Supreme Court, in a unanimous opinion authored by Justice

Souter, rejected this conclusion and found that the statute

imposing the surcharges was not preempted. In reaching this result,

the Court acknowledged that the surcharges affected ERISA plans by

encouraging insurance buyers, including ERISA plans, to choose

certain insurers (i.e., Blue Cross) over other insurers. Travelers,

514 U.S. at ___, 131 L. Ed. 2d at 707, 115 S. Ct. at 1679. The

Court nevertheless concluded that the statute was not preempted,

because an "indirect economic influence *** does not bind plan

administrators to any particular choice *** [or] preclude uniform

administrative practice or the provision of a uniform interstate

benefit package ***. It simply bears on the costs of benefits and

the relative costs of competing insurance to provide them."

Travelers, 514 U.S. at ___, 131 L. Ed. 2d at 707-08, 115 S. Ct. at

1679. The Court concluded that "laws with only an indirect economic

effect on the relative costs of various health insurance packages

in a given State are a far cry from those `conflicting directives'

from which Congress meant to insulate ERISA plans." Travelers, 514

U.S. at ___, 131 L. Ed. 2d at 709, 115 S. Ct. at 1680.

     Likewise, application of the common fund doctrine does not

"bind plan administrators to any particular choice *** [or]

preclude uniform administrative practice or the provision of a

uniform interstate benefit package." Regardless of the common fund

doctrine, a plan may choose to initiate its own action against

responsible tortfeasors to recoup benefits paid to plan

beneficiaries. In such circumstances, the plan must employ legal

counsel, file a lawsuit and expend litigation costs. A plan may

also choose to wait for the injured person to seek compensation

from a responsible third party and then enforce its right to

subrogation under the benefit plan. Where an attorney performs

legal services on the plan's behalf, however, the plan has a legal

obligation to pay that attorney a reasonable fee for those

services. It may not simply accept the fruits of an attorney's

labor without paying a reasonable fee for the legal services

rendered. Had the Trustees hired independent counsel to pursue

their subrogation lien and then, after services were rendered,

inexplicably refused to pay the bill for such services, we would

not hesitate to obligate them to pay. The preemption provision of

ERISA does not compel a different result here simply because we are

dealing with a quasi-contractual obligation to pay for legal

services. "[I]f ERISA is held to invalidate every state action that

may increase the cost of operating employee benefit plans, those

plans will be permitted a charmed existence that never was

contemplated by Congress." United Wire, 995 F.2d at 1194, citing

Rebaldo v. Cuomo, 749 F.2d 133 (2d Cir. 1984).

     Our conclusion is also supported by the Supreme Court's

decision in Mackey. The Court there held that ERISA's preemption

provision did not bar application of a general state garnishment

statute to participants' benefits under an ERISA plan, even though

garnishment imposed administrative costs and burdens on benefit

plans. The Court acknowledged that, when a plan was garnished by

creditors under the statute, plan trustees were served with

garnishment summons, became parties to a suit, and ultimately

deposited the funds that they would otherwise hold or pay out to

beneficiaries. Although compliance with the state law admittedly

subjected ERISA plans to substantial administrative burdens and

costs, the Court nevertheless found that the statute did not

"relate to" benefit plans within the meaning of section 514(a).

Mackey, 486 U.S. at 831, 100 L. Ed. 2d at 845, 108 S. Ct. at 2186.

     In sum, we have before us a generally applicable common law

doctrine which (1) is not intended to regulate the affairs of ERISA

plans, (2) neither singles out such plans for special treatment nor

predicates rights or obligations on the existence of an ERISA plan,

and (3) does not have either the effect of dictating or restricting

the manner in which ERISA plans structure or conduct their affairs

or the effect of impairing their ability to operate simultaneously

in more than one state. The purpose of ERISA is to protect

employees, not to provide loopholes through which ERISA plans can

avoid paying their debts. We therefore decline to hold that the

common fund doctrine is preempted by section 514(a). Without

explicit direction, we would not ascribe to Congress the intention

to void existing general provisions of state law protecting the

very beneficiaries of the ERISA statute.

                                     3

     As a final matter, we reject the Trustees' claim that we are

bound to follow statements made in a decision of the Seventh

Circuit Court of Appeals in Land v. Chicago Truck Drivers, Helpers

& Warehouse Union Health & Welfare Fund, 25 F.3d 509 (7th Cir.

1994), to the effect that the common fund doctrine may not be

applied to ERISA benefit plans. The statements in Land concerning

the common fund doctrine are pure dicta. See Carpenter v. Modern

Drop Forge Co., 919 F. Supp. 1198, 1205 (N.D. Ind. 1995). The

question raised in this appeal--namely, whether the common fund

doctrine "relates to" and is therefore preempted by section 514(a)

of ERISA--was never raised or decided in Land. The plaintiff in

Land did not invoke the common fund doctrine in either the district

or the appeals court. Land, 25 F.3d at 513; Modern Drop Forge Co.,

919 F. Supp. at 1205 n.5. Rather, the only substantive issue the

Land court decided was that ERISA did not unconstitutionally

delegate legislative authority to private welfare benefit plans.

Land, 25 F.3d at 512-13 (court also addressed a procedural matter

and held that the plaintiff's attempt to challenge the plan's

denial of benefits to him pursuant to a section 1983 cause of

action warranted Rule 11 sanctions). Therefore, we are not bound by

the language upon which the Trustees rely.

                                CONCLUSION

     For the reasons stated above, we hold that any effect the

common fund doctrine has upon employee benefit plans is simply too

tenuous, remote or peripheral to warrant a finding that the

doctrine "relates to" such plans. We therefore conclude that the

doctrine is outside the scope of ERISA's preemption provision (29

U.S.C. §1144(a) (1982)). The Trustees are obligated to pay the

reasonable value of the legal services rendered in protecting their

subrogation lien. Accordingly, the appellate court judgment

affirming the trial court's judgment holding the Trustees liable

for the legal expenses incurred in protecting their subrogation

lien is affirmed.

 Affirmed.